UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| SUNTRUST EQUIPMENT FINANCE & LEASING CORPORATION | ) | |
| V. | ) | NO. 2:09-CV-66 |
| A&E SALVAGE, INC., *ET AL.* | ) | |

**MEMORANDUM AND ORDER**

Plaintiff is a Virginia corporation with its principal office in Maryland. It provides financing to those who wish to purchase, or lease, heavy construction equipment. The defendant, A&E Salvage, Inc. ("A&E") is a Tennessee corporation with its principal place of business in Morristown, Tennessee.

In October 2006, A&E purportedly leased a Komatsu Excavator from plaintiff. The answer filed in this case asserts that in reality the transaction was a secured sale, not a lease; in view of plaintiff's concession hereafter discussed, the court will treat the transaction as a secured sale subject to Article 9 of the Uniform Commercial Code.

A&E executed an Equipment Lease Agreement, i.e., an agreement to purchase the Excavator. Plaintiff provided financing in the amount of $355,964.80 to enable A&E to purchase the Excavator. On the same date that A&E executed the Equipment Lease Agreement, plaintiff alleges that each of the individual defendants, as well as a partnership comprised of several of those individuals, executed an "Equipment Lease Guaranty," guaranteeing A&E's obligations, including its payment obligations, under the Equipment

Lease Agreement. Hereafter, the partnership and the individual defendants will be referred to as "defendants" or "guarantor defendants." The corporate defendant, A&E, will be referred to merely as "A&E."

A&E defaulted on its payment obligations under the Equipment Lease Agreement, as a result of which plaintiff repossessed the Excavator on December 15, 2008. In April 2009, plaintiff filed this suit against A&E for breach of its obligations under the Equipment Lease Agreement, and against the remaining defendants under the guaranties executed by them.

In the answer filed in this case, A&E admits that it did not make its payments as required, which constituted an event of default under the Equipment Lease Agreement. With respect to the guarantor-defendants, the answer asserts that (1) the plaintiff is precluded from recovering against them because the plaintiff fraudulently induced them to sign documents (the guaranties) that were not what they were represented to be, and (2) the plaintiff has failed to follow the requirements of Article 9 of the Uniform Commercial Code.[1]

Plaintiff has moved for partial summary judgment against A&E and the guarantor-defendants, arguing that as a matter of law that they are liable for "liquidated damages" under paragraph 16(b) of the Equipment Lease Agreement. (Doc. 21).[2]

---

[1]Defendants also pled "unclean hand" as an affirmative defense. This defense relates to, and is subsumed by, defendants' other two affirmative defenses, fraudulent inducement and failure to comply with Article 9. The Rule 12(b)(6) defense has never been mentioned again and clearly has no application to this case.

[2]The complaint also sought damages against A&E for breach of its contractual obligations to repair and maintain the Excavator. Plaintiff's motion for partial summary judgment does not address that claim.

"Summary Judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." F.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then falls upon the non-moving party to demonstrate that there exists evidence that will require a trial to resolve a material factual dispute. *Id*. at 322. However, a mere scintilla of evidence will not suffice. *Anderson v. Liberty Lobby Inc*., 477 U.S. 242 at 248 (1986).

In ruling upon a motion for summary judgment, the trial court is required to determine if there exists sufficient evidence from which a jury reasonably could find for the non-moving party. *Anderson*, 477 U.S. at 248-49. If the non-moving party fails to make a sufficient showing that there is a real dispute regarding a material fact at issue which reasonably would require a jury to resolve, then the motion for summary judgment should be granted. *Celotex*, 477 U.S. at 323; *Lansing Dairy Inc. v.* ESPY 39 F.3d 1339, 1347 (6th Cir. 1994).

The parties agree that Maryland law controls in this case.

During oral argument on the motion, plaintiff's counsel stated that he had no objection to the court treating the subject transaction as a secured sale under Article 9 of Maryland's

Uniform Commercial Code.

The following facts are relevant to the resolution of plaintiff's motion:

(1) A&E defaulted on its repayment obligations (undisputed).

(2) All of the defendants executed guaranties to secure A&E's performance under the Equipment Lease Agreement. Defendants concede they signed the guaranties, but they contend they did not realize what they were signing, or that plaintiff fraudulently induced them to sign the guaranties.

(3) The guaranties authorized the plaintiff to proceed against the guarantors, regardless of plaintiff's actions, or non-action, with respect to the collateral.

(4) In the event of A&E's default, and in view of plaintiff's concession that the transaction between it and A&E may be treated as a secured sale rather than a lease, plaintiff's damages are controlled by ¶ 10(c) of the Equipment Lease Agreement. Plaintiff's damages calculated under that section would be $250,069.94, plus legal fees, costs of enforcement, and accruing expenses.

Defendants dispute that the plaintiff is entitled to *any* damages under ¶ 10(c) or any other provision of the Equipment Lease Agreement, an argument which will be discussed hereafter. Defendants, however, do not dispute the amount itself, i.e., the method of calculation and its result.

(5) Although plaintiff repossessed the Excavator, it has not resold, released, or otherwise disposed of it. Although agreeing this is true, plaintiff argues that it is irrelevant.

(6) Plaintiff has not given the defendants any notice of its intent to dispose of, or

retain, the Excavator. Again, plaintiff argues this fact is immaterial to its motion.

(7) Defendants have no knowledge regarding what use has been made of the Excavator since its repossession by the plaintiff in December 2008; no information regarding plaintiff's efforts to dispose of the Excavator; and no information regarding the market value of the Excavator "at critical dates relevant to the transaction at issue in this case." Once again, plaintiff maintains these facts are immaterial.

(8) Based upon its condition when repossessed from A&E, the Excavator has a market price of $70,000-$85,000 dollars.

(9) Plaintiff has attempted to sell the Excavator through three third-party vendors, as a result of which the highest offer received by plaintiff for the Excavator was $30,000. Plaintiff did not accept that offer since it was less than the $70,000 appraised value of the Excavator.

**DEFENDANTS' ARGUMENTS**

Defendants make two basic arguments in response to the plaintiff's motion for partial summary judgment:

(1) they were fraudulently induced by the plaintiff to sign the guaranties; and

(2) the plaintiff cannot sue the defendants on their guaranties until the plaintiff has disposed of the Excavator in a commercially reasonable manner as required by Article 9 of Maryland's Uniform Commercial Code and thereafter gives credit to the defendants for the monies received by plaintiff pursuant to that commercially reasonable disposition. They also argue, less vigorously, that plaintiff has constructively accepted the Excavator in full

satisfaction of A&E's debt.

**FRAUDULENT INDUCEMENT**

First, the allegation in their answer and counter-complaint that they were "fraudulently induced" to affix their signatures to documents that were not what they were represented to be, without more, is insufficient to make fraud a viable issue: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." F.R.Civ.P. 9(b). Defendants' answer contains only a conclusory allegation and no particularized facts.

Second, as far as a motion for summary judgment is concerned, a party may not rest upon the mere allegations of his pleadings, but must demonstrate by affidavit or other suitable method that there are specific facts showing a genuine issue for trial. F.R.Civ.P. 56(e)(2). In this regard, defendants filed the affidavit of Mr. Harold Nichols in which he states that he signed a plethora of other unrelated documents at the time he signed the guaranty and that he *believes* that he was misled into signing a guaranty for the Excavator.[3] A party opposing a motion for summary judgment must present probative evidence that will require a trial to resolve a material factual dispute. *Celotex*, 477 U.S. at 322. Respectfully, Mr. Nichols' belief, based on his after-the-fact analysis, is far too speculative to warrant submission to the jury. His belief and the underlying assumption upon which that belief is based are inadequate under Maryland law to prove fraud. *Ellerin v. Fairfax Savings, F.S.B.*,

---

[3]No other defendant signed a similar affidavit. Nevertheless, for purposes of this discussion, it will be assumed that each defendant did so.

652 Atl.2d 1117 (1995). Moreover, under Maryland law, a person "is under a duty to learn the contents of a contract before signing it . . . [and] if, in the absence of fraud, duress, undue influence, and the like he fails to do so, he is presumed to know the contents, signs at his peril, suffers the consequences of his negligence, and is estopped to deny his obligation under the contract." *Holzman v. Fiola Blum, Inc.*, 726 Atl.2d 818, 831, Md. app. 1999 (quoting 17 CJS Contracts § 137(b) (1963)). Thus, Mr. Nichols' affidavit fails to present an issue of material fact regarding defendants' claim of fraudulent inducement.

**HAS PLAINTIFF'S REPOSSESSION AND RETENTION OF THE EXCAVATOR PRECLUDED A SUIT AGAINST THE GUARANTORS?**

Defendants' argue that plaintiff's repossession of the Excavator effectively precludes plaintiff from suing on the guaranties until it has disposed of the Excavator in a commercially reasonable manner.

As an initial matter, defendants' argument that plaintiff's suit against them on their guaranties, while also retaining the Excavator, is "double-dipping," i.e., a windfall, would be a valid point *if* plaintiff intended to do both without ultimately accounting to the defendants for the value of the Excavator. But plaintiff acknowledged during oral argument that it must and will credit the proceeds of its disposition of the Excavator to the judgment on the guaranties. Even apart from that acknowledgment, neither this nor any other court would allow the plaintiff to recover from the guarantors the full amount owed on A&E's debt, and also retain the collateral or the proceeds of the collateral for that debt. As a "secondary obligor," defendants potentially will have subrogation rights with respect to the

Excavator.[4] Thus, defendants' argument that the plaintiff is "double-dipping" is not well-taken.

Defendants correctly argue that guarantors and debtors enjoy the same rights and protections under Article 9 of Maryland's Uniform Commercial Code.[5] They then go on to argue that plaintiff was obliged by § 9-611 to notify its debtor ( A&E) *and them* of its "disposition" of the Excavator and since plaintiff did not do so, it is barred from suing on the guaranties. The problem with that argument is that the statute requires notice *before* disposition, and there has been no disposition of the Excavator. Plaintiff has solicited offers for it, but to date only three offers, the highest of which was $30,000.00, has been received.[6] Since plaintiff has an appraisal that indicates that the Excavator is worth $70,000.00, its acceptance of the $30,000.00 offer would insure assertions that the plaintiff acted in a commercially unreasonable manner, and rightly so. It is for this reason that plaintiff's repossession and retention of the Excavator cannot be construed as a constructive acceptance of the Excavator in total or partial satisfaction of A&E's debt. Plaintiff has attempted to dispose of the Excavator, but has been unable to do so. Also, there is no claim, much less

---

[4]Md. Code, Commercial Law, § 9-102(71); § 9-618(a). For convenience's sake, hereafter the references to the Maryland statutes will be only to the section, e.g., § 9-102(71).

[5]§ 9-102(a)(28) and (72).

[6]The Excavator was repossessed December 2008, which, if not the nadir of the current Great Recession, certainly was close to it. Not only has the construction industry been in the proverbial economic tank, those with money have been unwilling to spend it, and the banks have been unwilling to lend money. Suffice it to say, it is more than understandable why plaintiff has received no reasonable offers on the Excavator.

evidence, that plaintiff agreed that it intended to accept the Excavator in satisfaction of the indebtedness.[7]

It is at this point that we arrive at the heart of the defendants' argument: that the plaintiff cannot sue them on their guaranties because it repossessed the Excavator. Plaintiff argues that, when A&E defaulted, plaintiff had three options: repossess the Excavator and dispose of it; repossess the Excavator and retain it in satisfaction of the debt; or obtain a judgment against the debtor and then execute on that judgment. Defendants argue that once plaintiff repossessed the Excavator, it forfeited its option to seek a money judgment for the full balance owing.

If it be assumed for the sake of discussion that a secured creditor cannot repossess collateral and sue its debtor for the full amount owed before disposing of that collateral, that prohibition does not extend to the guarantor-defendants herein in view of the guaranties they signed. The guaranties executed by each of these defendants specifically provided that plaintiff was not required to exhaust its remedies against the collateral prior to seeking repayment under the guaranties. A waiver of any requirement that a secured creditor first proceed against the collateral is not prohibited by Maryland's Uniform Commercial Code. To be sure, § 9-602(3) prohibits any attempted waiver by an obligor of the requirement under § 9-607(c) that the secured party must proceed in a commercially reasonable manner in its collection efforts. But, at least up to this juncture, plaintiff has proceeded in a commercially

[7] § 9-620(b), and comment 5 thereunder.

reasonable manner. After repossessing the Excavator, it has repaired and safeguarded it, and plaintiff has failed to dispose of it only because the offers received by plaintiff were less than 50% of its appraised value.

Defendants rely on *Gambo v. Bank of Maryland*, 648 A.2d 1105 (Md.Apps.1994), in which it is held that then-section 9-504(3) of the Uniform Commercial Code prohibited a waiver by a guarantor of notice by the secured party before it disposes of the collateral. Defendants' reliance on *Gambo* is misplaced for two reasons: first, as already mentioned, although plaintiff has attempted to dispose of the Excavator, it has not yet done so. Second, the Uniform Commercial Code was extensively amended subsequent to the *Gambo* decision. The current Uniform Commercial Code contains no prohibition against a guarantor's waiver of disposition of the collateral as a prerequisite to his liability on the guaranty. The case of *Capitalsource Finance LLC. v. Delco Oil Inc*., 608 F.Supp.2d 655 (D. Md. 2009) is directly on point to the case before this court. In *Capitalsource*, the defendant executed a guaranty with language virtually identical to that of the guaranties executed by defendants herein. After default by the debtor, the secured creditor sued the guarantor. The guarantor argued that plaintiff could not obtain a judgment against him because (1) it did not provide him with notice of the disposition of the collateral, and (2) plaintiff did not provide him with any evidence that its liquidation of the collateral was commercially reasonable. 608 F.Supp.2d at 662. The district court held that:

> paragraph 19 of the Guaranty Agreement gives Plaintiff the discretion to determine which remedies, if any, to pursue against [the guarantor] in the event of default by [the debtor]. Additionally, paragraph 3 of the Guaranty Agreement specifically

> states that Plaintiff does not have to exhaust its remedies against the collateral prior to seeking repayment from the guarantor . . . . Accordingly, based on the rules set forth in *Duke*, Plaintiff was not required to dispose of the collateral, much less notify [the guarantor]. Therefore, [the guarantor's] affirmative defense upon which he opposes the motion for summary judgment fails. [8]

*Id.*, at 664.

This court agrees with the reasoning of the district court in *Capitalsource*.

**CONCLUSION**

The defendants' guaranties explicitly authorized the plaintiff to do what it has done in this case, *viz.*, both repossess the collateral and file suit on the guaranties, and Article 9 of Maryland's Uniform Commercial Code does not prohibit plaintiff from relying upon that language. To date, the plaintiff has proceeded in a commercially reasonable manner; stated another way, its failure to dispose of the Excavator has not been commercially unreasonable under the undisputed facts.

Plaintiff's motion for partial summary judgment (Doc. 21) is accordingly GRANTED with respect to the defendants' liability on their guaranties. Based on Mr. Faherty's affidavit, the amount owed plaintiff on June 19, 2009, was $250,069.94, with interest accruing daily in the amount of $41.61. Therefore, as of October 26, 2009, the total amount owed is $255,437.63. The Clerk is DIRECTED to enter final judgment against the defendants, A&E Salvage, Inc; Main Street Rentals, a partnership; Ann C. Nichols; Lisa Sawyer; Amy Eanes; Joseph O. Nichols; Russell L. Nichols; Nick Smith; Elisa Smith; Alisa Gruenberg; and Eric

---

[8]Those affirmative defenses, set out in footnote 4 of the *Capitalsource* opinion, included fraudulent inducement, unclean hands, and failure to dispose of collateral in a commercially reasonable manner.

Gruenberg, in the amount of $255, 437.63.

The suit against A&E for breach of contract (failure to repair and maintain) will go forward.

SO ORDERED:

s/ Dennis H. Inman
United States Magistrate Judge